```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

CHRISTOPHER M. ALVANAS and          :   BK No. 05-15052
SHARI A. ALVANAS                            Chapter 7
         Debtors                    :


CHRISTOPHER M. ALVANAS and          :
SHARI A. ALVANAS
         Plaintiffs
v.                                  :   A.P. No. 05-1083


COLLEGE ACCESS NETWORK and          :
U.S. DEPARTMENT OF EDUCATION
         Defendants
- - - - - - - - - - - - - - - - - -x
```

**ORDER ON REMAND**

On remand from the United States District Court for the District of Rhode Island, Mary M. Lisi, Chief Judge (by Order dated May 22, 2007), with instructions "to consider College Access Network and the U.S. Department of Education's (collectively "CAN & Dept. of Ed.") legal argument that this Court improperly admitted and considered as evidence the lay testimony of Shari Alvanas with respect to the medical condition of Christopher Alvanas's relatives, and as it pertained to Christopher Alvanas's own medical condition."

In accordance with the District Court's instructions, and upon review of the record and supplemental briefs, I am satisfied that the evidence in question was correctly[1] admitted and that the

---

[1] In the event that the admission of such evidence is eventually determined to have been erroneous, its allowance was harmless, as the outcome on the merits would be the same based on the entire record, with or without the lay testimony in question.

BK No. 05-15052; A.P. No. 05-1083

decision granting the Alvanas's discharge of their student loan obligations is otherwise well supported by competent expert medical evidence, and should remain unchanged.

### **DISCUSSION**

In appropriate circumstances, Federal Rule of Evidence 701 permits the admission of opinion testimony by a lay witness:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of 702.

Fed. R. Evid. 701.

To be within the scope of Rule 701, Shari Alvanas, as a lay witness, must have had personal knowledge of the facts upon which his/her opinion or inference was based. Fed. R. Evid. 602 ("Admissible testimony is limited to matters of which the witness has acquired personal knowledge through any of his own senses.")

Here, Shari Alvanas testified as to her observations concerning the steady increase in the amount and level of care required by Christopher Alvanas's father, who also suffers from Machado-Joseph Disease ("MJD"). Counsel for College Access Network objected,[2] stating:

---

[2] The U.S. Department of Education later joined in the objection. Transcript of November 29, 2006 Hearing, Defendants'

2

BK No. 05-15052; A.P. No. 05-1083

> MR. SEEDORF: I object to that question, Your Honor. That's speculative. He's asking the witness what care is being provided to in-laws who may have - - who have this disease. They may have a different - - they may be in a different stage of the disease or have a different type or level of the disease. So that may not be relevant to what's going to happen in the future with respect to the witness' husband.
>
> THE COURT: I just was able to get a quick look at the doctor's report which I understand is going to be part of the evidence?
>
> MR. ORR: Yes, Your Honor.
>
> THE COURT: And I'm going on the assumption right now that the disease that the debtor has is the same one that seems to run through his family. So I'm going to overrule the objection. Depending on cross examination will have a lot to do with the weight that's given the evidence and also maybe its admissibility also if you're correct about the different stages having no relevance to each other. So I'm going to kind of leave it open, but let it in for now.[3]

Transcript of November 29, 2006 Hearing, Defendants' Exhibit B, p. 21-22.

Then, during cross-examination of Shari Alvanas by College Access Network, counsel asked:

> MR. SEEDORF: So when you say that your assumption is that Chris will be forced to use a wheelchair at some point in the future?
>
> SHARI: That's my assumption. I only can base that on his father.

---

Exhibit B, p. 22.

[3] As to this issue, no additional objections were made at the trial.

3

BK No. 05-15052; A.P. No. 05-1083

>    MR. SEEDORF: Okay. So that's just based on what you've observed from two people who have this disorder in his family.
>
>    SHARI: Well, there's more than two. He has an aunt that passed away about 20 years ago and a cousin his age that just passed away three or four months ago.
>
>    MR. SEEDORF: And were either of them using a wheelchair?
>
>    SHARI: Yes.
>
>    MR. SEEDORF: Both of them?
>
>    SHARI: Both of them.
>
>    MR. SEEDORF: Okay. So it's based on your observations from four people?
>
>    SHARI: Yes.

*Id.* at 25-26.

Shari Alvanas's testimony concerning the progressive nature of MJD, as observed through her husband's father and other relatives on his side of the family, was based on her personal observations during the twenty-six years she and Christopher have been married. *Id.* at 22, see Fed. R. Evid. 701(a). Shari's testimony was helpful to the Court's understanding Christopher's illness, not as technical medical information, but from a lay caregiver's standpoint which, in the context of an undue hardship hearing, is as important and relevant as expert medical evidence. *See* Transcript, Exhibit B at 21-22; Fed. R. Evid. 701(b). Finally, as was revealed during CAN's cross-examination, Shari's testimony was not based on "scientific, technical or other specialized

4

BK No. 05-15052; A.P. No. 05-1083

knowledge," but rather was the result of her years of personal experience with Christopher and his relatives afflicted with MJD. *Id.* at 25-26; Fed. R. Evid. 701(c).

While Shari's testimony was admitted mainly to have the benefit of her observations of the demands and effects of MJD upon caregivers, this Court's evaluation of the nature and severity of Christopher's illness and the financial impact on him and his family was based on the (deposition) testimony of Alvanas's treating physician, Dr. Carlo Brogna, who did not appear personally at the November 29, 2006 hearing because he was ill at the time of trial and was unable to appear in person. To avoid the need for a continued hearing, the parties agreed to admit his medical report:[4]

> THE COURT: Okay. And is that - - your agreement to admit the report of Dr. Brogna, that's going to be it for - - you're waiving any kind of cross examination, I guess?
>
> MR. SEEDORF: The agreement as far as what College Access Network agreed to was that these documents would be admitted as in place of his testimony, that this is what he would have testified to if here today. My understanding is that applies to both examination and cross examination.
>
> MR. ORR: Yes, Judge.

Transcript of November 29, 2006 Hearing, Defendants' Exhibit B, pp. 3, 65.

---

[4] Dr. Brogna's medical report contains all of the elements required to establish the Debtors' case.

5

BK No. 05-15052; A.P. No. 05-1083

The Debtor's testimony regarding his symptoms mirrored, in lay terms, those described by Dr. Brogna, *id.* at 68, 70-73, 96-98, 144:

> THE COURT: Excuse me.  Let me ask one question before - - I'm asking strictly from your own personal knowledge, either dealing with yourself or from what you've seen taking care of your father, does this condition - - have you seen anything resembling a remission or standing still of the condition or is it a steadily progressive thing that just keeps moving?
>
> CHRISTOPHER: Steadily progressive.  It keeps moving.
>
> THE COURT: You haven't noticed any relief or break in the situation?
>
> CHRISTOPHER: No, I haven't.
>
> THE COURT: With yourself or your father?
>
> CHRISTOPHER: No. I haven't.

*Id.* at 85.

> In his report, Dr. Brogna states:
>
> Over the last four years Chris' *condition has progressed*. His principal manifestations of MJD are (1) gait ataxia. This refers to impairment of his ability to walk and stand due to poor balance...,(2) increasing difficulty with arm, hand and finger mobility.  MJD affects coordination, not only of walking, but also of arm and hand movements.  Chris *now* has the start of the same type of unsteadiness characteristic of his gait in his arm called dysmetria....

*Id.* at 62 (emphasis added).  Dr. Brogna's report then summarizes the Debtor's condition as follows:

> In conclusion, MJD is a progressing, degenerative, neurological disease.   Mr. Alvanas's present manifestations of MJD are not expected to improve or stabilize.  There will be a slow and steady progression

6

BK No. 05-15052; A.P. No. 05-1083

> of central nervous involvement manifested by greater physical impairments over time.

*Id.* at 63.

Upon careful review, I believe now, as I did at trial, that the Debtors' position is fully supported by competent expert opinion evidence, as well as their own lay testimony, which described Christopher's physical deterioration, and explained how his condition affects the family's employment opportunities and earning capacity. *See Nash v. Connecticut Student Found. (In re Nash)*, 446 F.3d 188, 192 (1st Cir. 2006); *Smith v. Educ. Credit Mgmt. Corp. (In re Smith)*, 328 B.R. 605, 610-611 (B.A.P. 1st Cir. 2005) (debtor's burden is to prove by a preponderance of the evidence that repayment of the loan would impose an undue hardship). The record also shows, based upon a reasonable degree of medical certainty, that the Debtor's illness, presently, and in the future, prevents him from holding steady employment sufficient to meet his financial obligations, including the debt in question.

It is important to keep in mind that the only evidence in the record is that the Debtor's MJD symptoms will not improve over time, and in fact will become progressively worse. *State Univ. New York-Student Loan Service Ctr. v. Menezes (In re Menezes)*, 352 B.R. 8, 11, 16 (Bankr. D. Mass. 2006) (if discharge is based on a medical condition, debtor must prove "that the condition will prevent her from earning sufficient income to repay the debt" at

7

BK No. 05-15052; A.P. No. 05-1083

present and in the future); *Hertzel v. Educ. Credit Mgmt Corp. (In re Hertzel)*, 329 B.R. 221 (B.A.P. 6th Cir. 2005) (bankruptcy court may take judicial notice of the progressive nature of a debtor's illness and its effect on the debtor's ability to earn a living). Further, the Debtor's medical history and his current health status remain uncontroverted. There is no evidence to rebut Dr. Brogna's medical report or to contradict the Debtors' testimony concerning the progression of Christopher's physical problems.

The Alvanases have clearly established through both lay testimony and competent expert medical evidence that their future earning capacity is sufficiently diminished and limited to warrant a discharge of their student loans. *Denittis v. Educ. Credit Mgmt Corp. (In re Denittis),* 362 B.R. 57, 63, 66 (Bankr. D. Mass. 2007)(court found it unlikely that the debtor's medical or financial condition would improve due to his chronic degenerative disease); *Dufresne v. NH Higher Educ. Assistance Found. (In re Dufresne)*, 341 B.R. 391 (Bankr. D. Mass. 2006) (student loans discharged, debtor suffering from a debilitating medical condition); *Gharavi v. U.S. Dept. of Educ. and Educ. Credit Mgmt Corp. (In re Gharavi),* 335 B.R. 492 (Bankr. D. Mass. 2006) (undue hardship found, debtor suffered from multiple sclerosis).

A review of the entire record satisfies me that the continuing obligation to repay the student loans in question would cause the

8

BK No. 05-15052; A.P. No. 05-1083

Debtors and their family undue hardship under § 523(a)(8). Accordingly, Plaintiffs' Complaint to have the student loan debt discharged is **GRANTED**.

Dated at Providence, Rhode Island, this 9th day of May, 2008.

                                    Arthur N. Votolato
                                    U.S. Bankruptcy Judge

Entered on docket: 5/9/08